# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LOUISE LIVINGSTON, MELISSA RAINEY, DAVID SMITH, RAYMOND SABBATINE, PETER GOLDIS, and BILL COLBERT, on behalf of themselves and all others similarly situated, | : : : : : : : | Civil Action No. 17-6480 (ES) (MAH) |
| Plaintiffs, | : : | OPINION |
| v. | : : | |
| TRANE INC., | : : | |
| Defendant. | : : : | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Trane Inc.'s ("Defendant's" or "Trane's") motion to dismiss the Complaint of Plaintiffs Louise Livingston, Melissa Rainey, David Smith, Raymond Sabbatine, Peter Goldis, and Bill Colbert (collectively, "Plaintiffs") under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). (D.E. No. 14). The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332(d). After considering the parties' submissions,[1] the Court reaches its decision without oral argument. *See* D.N.J. Civ. R. 78.1(b). For the following reasons, the Court GRANTS-in-part and DENIES-in-part Defendant's motion to dismiss.

## I.      Background

Plaintiffs bring this putative class action to recover damages arising from Defendant's allegedly defective HVAC systems, including air conditioners and heat pumps ("systems"). (D.E.

---

[1]      (*See* D.E. No. 14-1, Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mov. Br."); D.E. No. 16, Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp. Br."); D.E. No. 17, Defendant's Reply Brief ("Def. Reply Br.")).

No. 1, Complaint ("Compl.") ¶ 1).  The Court will "set out facts as they appear in the Complaint .

. . ."  *See Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).  According to the Complaint,

Defendant's systems contain defective thermal expansion valves ("TXVs").  (Compl. ¶ 1).  The

defect arises from a chemical rust inhibitor, Ryconox, used in manufacturing by one of Trane's

suppliers from mid-2013 through at least late 2014.  (*Id.*).  Ryconox "is incompatible with the oil

and/or refrigerants used in the . . . systems and creates a sticky substance that collects on the TXV,

leading to degraded performance and . . . failure of [the systems]."  (*Id.*).

Plaintiffs assert that Defendant "discovered the defect by the early summer of 2014 (and

likely much earlier) and quickly determined that the root cause was the rust inhibitor."  (*Id.* ¶ 2).

Nevertheless, Defendant "continued to sell [the] . . . systems containing the rust inhibitor without

disclosing it so that Trane could offload its inventory . . . onto unsuspecting consumers."  (*Id.*).

"Thousands of . . . systems failed within months or just a few years of purchase due to this

undisclosed defect, and tens of thousands of the systems contain the defect, which will impact their

performance and value for years to come."  (*Id.* ¶ 3).  Furthermore, "[e]ven where the

contamination has not yet resulted in a complete TXV or system failure, this known defect is likely

to cause a failure to some point in the future."  (*Id.* ¶ 5).

As the basis for their legal claims, Plaintiffs allege that Defendant extended an express

"limited warranty against manufacturing defects" with respect to "all parts" in its systems.  (*Id.* ¶¶

34 & 135).  Plaintiffs also allege that Defendant expressly warranted that it would "provide

adequate repairs," such as by "replac[ing] . . . parts," required as a result of manufacturing defects.

(*Id.* ¶¶ 4 & 6).  Both of these alleged promises are rooted in a written warranty agreement issued

to Plaintiffs (the "Express Warranty").[2]  Defendant, Plaintiffs allege, has not complied with its obligations under the Express Warranty.  (*See, e.g.*, *id.* ¶ 4).  Instead, for instance, Defendant "has been instructing service personnel to inject the defective systems" with a harmful chemical called MJ-X.  (*Id.*).  MJ-X is "highly acidic," "causes premature wear," and "damages and devalues the . . . systems."  (*Id.*).  In contrast, "[a]n adequate repair" of the defective systems would "require[] at least replacing the contaminated oil, TXV, and filters . . . and in some cases may require replacing the entire compressor," all "as required by" the Express Warranty.  (*Id.* ¶¶ 33–35).  ("Injecting MJ-X is far simpler and cheaper than performing an adequate warranty repair." (*Id.*).)

Consequently, Plaintiffs bring this lawsuit on behalf of themselves and all similarly-situated individuals.  (*Id.* ¶ 84).  Generally, Plaintiffs bring state statutory and common-law claims for breach of warranty, fraud, and unjust enrichment; and a federal claim based on the state-law claims for breach of warranty.  (*See generally id.* ¶¶ 96–334).  Plaintiffs seek to certify a nationwide class for their claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*  (*Id.* ¶ 85).  Plaintiffs also seek to certify subclasses ("State Sub-Classes") for their common-law and state-statutory claims under North Carolina, Pennsylvania, Wisconsin, Illinois, Massachusetts, and Kentucky law.  (*Id.* ¶ 86).  The individual plaintiffs representing those classes are described below in the context of their respective warranty claims.  Plaintiffs "seek all remedies as allowed by law."  (*Id.* ¶ 140).

---

[2]    The Express Warranty ("Def. Mov. Br. Ex. A") is appended to D.E. No. 41.  "Though Plaintiff[s] did not attach the [Express] Warranty to the . . . Complaint, the . . . Complaint specifically references [it] and Plaintiff[s'] claims are based on it.  Accordingly, it is appropriate for the Court to consider the [Express] Warranty in deciding Defendant's motion to dismiss."  *See Miller v. Samsung Elecs. Am., Inc.*, No. 14-4076, 2015 WL 3965608, at *15 (D.N.J. June 29, 2015).

As noted above, Defendant has moved to dismiss the Complaint under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* D.E. No. 14). The Court addresses Defendant's arguments in the analysis of Plaintiffs' claims below.

## II.  Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." But in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

Pursuant to the pleading regime established by *Twombly* and *Iqbal*, the Court of Appeals for this Circuit has promulgated a three-pronged test of the sufficiency of a complaint. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court considers "the elements a Plaintiff must plead to state a claim." *Id.* Second, the Court abstracts from mere legal conclusions contained in the complaint, which "are not entitled to an assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 664). That is, a complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, cannot "nudge[] [a plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Finally, the Court considers the complaint's remaining well-pleaded factual allegations and "determines whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at

130 (quoting *Iqbal*, 556 U.S. at 679). Throughout this process, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *See, e.g.*, *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 266 (3d Cir. 2016).

**B.      Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") states that when "alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." "In order to satisfy Rule 9(b), a complaint *must* provide all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) (emphasis added) (internal quotation marks omitted).  In other words, a complaint "must state the circumstances of . . . alleged fraud with sufficient particularity to place the defendant on notice of the '*precise misconduct* with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–224 (3d Cir. 2004)) (emphasis added).

To exactly which claims Rule 9(b) applies is not conclusively settled.  *See, e.g.*, *In re: Elk Cross Timbers Decking Mktg.*, No. 15-0018, 2015 WL 6467730, at *9 (D.N.J. Oct. 26, 2015).  The Court will address this issue in the context of the relevant counts, below.

**III.    Discussion**

**A.      Count I:  Violation of the Magnuson-Moss Warranty Act**

Plaintiffs bring a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"), on behalf of themselves, the nationwide Class, and the State Sub-Classes. (Compl. ¶¶ 96–107).   The MMWA "provides a private right of action in federal court for

consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written . . . [or] implied warranty.'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016) (quoting 15 U.S.C. § 2310(d)(1)). MMWA "claims based on breaches of express and implied warranties under state law depend upon those state law claims." *Avram v. Samsung Elecs. Am., Inc.*, No. 11-6973, 2013 WL 3654090, at *14 (D.N.J. July 11, 2013) (quoting *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008)); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).

Plaintiffs' MMWA claim is based on Defendant's alleged breaches of express and implied warranties under state law. (*See, e.g.*, Compl. ¶¶ 101–105). Plaintiffs have complied with the notice requirement of the MMWA and have adequately stated claims for many of those alleged breaches of express and implied warranties. (*See infra*, sections III.M–III.V). Plaintiffs' MMWA claim, therefore, may proceed to that extent. *See, e.g.*, *Granillo v. FCA US LLC*, No. 16-0153, 2016 WL 9405772, at *16 (D.N.J. Aug. 29, 2016) (permitting state-law breach-of-warranty claims to proceed under the MMWA); *Morris v. BMW of Am., LLC*, No. 13-4980, 2014 WL 793550, at *11 (D.N.J. Feb. 26, 2014) (same); *Avram*, 2013 WL 3654090, at *14 (same).

Accordingly, the Court DENIES Defendant's motion to dismiss Count I to the extent detailed below. (*See infra*, sections III.M–III.V).

## B. Count II: Negligent Misrepresentation

Plaintiffs bring negligent misrepresentation claims on behalf of themselves and their respective State Sub-Classes. (Compl. ¶¶ 108–16). They allege that "Defendant ha[d] and continue[s] to have a duty to disclose . . . the actual quality of [the] systems and the defect alleged herein" but that "Defendant negligently and/or recklessly misrepresented, omitted and concealed

from Plaintiffs and their respective State Sub-Classes material facts relating to the quality of [the] systems." (*Id.* ¶¶ 110–11). Defendant contends that Count II should be dismissed for failure to comply with Rule 9(b). (*See* Def. Mov. Br. at 29–34). The Court concurs.

As suggested above, it is not conclusively settled whether "the Third Circuit . . . would apply Rule 9(b) to *all* . . . negligent misrepresentation causes of action." *See In re Elk Cross Timbers*, 2015 WL 6467730, at *9 (emphasis added). But the weight of legal authority makes clear that Rule 9(b) applies to at least some negligent misrepresentation claims. *See, e.g.*, *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 n.3 (3d Cir. 2015) ("[The] claims for intentional and negligent misrepresentation . . . must be pled with sufficient particularity under Rule 9(b)."); *Lawmen Supply Co. of N.J., Inc. v. Glock, Inc.*, No. 17-6166, 2018 WL 3201790, at *16 (D.N.J. June 29, 2018) (dismissing a negligent misrepresentation claim for failure to comply with Rule 9(b)); *Semeran v. Blackberry Corp.*, No. 15-0750, 2016 WL 406339, at *5 (D.N.J. Feb. 2, 2016) (same); *Inventory Recovery Corp. v. Gabriel*, No. 11-1604, 2012 WL 2990693, at *6 (D.N.J. July 20, 2012) (same). *But see, e.g.*, *Beals v. Bank of Am.*, No. 10-5427, 2011 WL 5415174, at *13 (D.N.J. Nov. 4, 2011) ("Negligent misrepresentation does not have a heightened pleading standard.").

Regarding Rule 9(b)'s application to negligent misrepresentation claims, the Court of Appeals has observed that "the reputational concerns that animate Rule 9(b) with respect to a defendant accused of fraud are *not* implicated when a defendant stands accused of *nothing more* than negligence." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 (3d Cir. 2006) (emphases added). And "where the plaintiff has exercised care in *differentiating asserted negligence claims* from fraud claims and in *delineating the allegations* that support the negligence

cause of action *as distinct* from the fraud, the determination [whether Rule 9(b) applies] is straightforward." *Id.* at 273 (emphases added).

Here, in Count II, Plaintiffs alternatively allege *reckless* misrepresentation and accuse Defendant of "concealments" and having "concealed from Plaintiffs." (*See* Compl. ¶¶ 111–12). And they "repeat and reallege the allegations contained above" in the Complaint. (*Id.* ¶ 108). Those allegations include, for instance, that Defendant "*knowingly* sold . . . defective systems" and "foisted significant repair costs onto consumers." (*Id.* ¶ 3 (emphasis added)). These allegations do not amount to "nothing more" than negligence—they "sound[] in fraud," *see Travelers Indem. Co.*, 620 F. App'x at 85—and Count II does not "delineat[e] the allegations that support the negligence cause of action as distinct from the [alleged] fraud." *See Suprema Specialties*, 438 F.3d at 274. The Court, therefore, rules that Rule 9(b) applies to Count II. *See, e.g.*, *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011).

For at least two reasons, the Court will dismiss Count II under Rule 9(b). First, "[i]n order to satisfy Rule 9(b), a complaint *must* provide . . . the . . . *when* . . . of the events at issue." *Eastwick*, 657 F. App'x at 93 (emphases added) (quoting *Rockefeller*, 311 F.3d at 217). Here, Plaintiffs never allege *when* Defendant "negligently and/or recklessly misrepresented . . . and concealed . . . facts relating to the quality of [the] systems" or when it "had a duty to disclose . . . the defect alleged." (*See* Compl. ¶¶ 110–11).[3] The timing is crucial to Count II—which affirmatively alleges

---

[3]     Plaintiffs' briefing suggests that the "when" could have been before Plaintiffs purchased the systems *or* afterward when Defendant allegedly recommended that they receive "MJ-X injections [that] would further harm the systems." (*See* Pl. Opp. Br. at 14–15). As discussed above, however, the Complaint does not make clear *which* is the operative time, as required by Rule 9(b). *See, e.g.*, *Inventory Recovery Corp. v. Gabriel*, No. 11-01604, 2012 WL 2990693, at *6 (D.N.J. July 20, 2012) ("The Complaint completely fails to identify . . . when . . . th[e] representations were made . . . .").

that Defendant "concealed" (*see id.* ¶ 111)—because Plaintiffs also allege that Defendant only discovered the defect "by the early summer of 2014" (*see id.* ¶ 2). The Complaint does not, for instance, allege "with particularity" that Defendant had knowledge of the defect at the time Plaintiffs Colbert, Goldis, Rainey, and Sabbatine purchased their systems before or during summer 2014. *See* Fed. R. Civ. P. 9(b); (Compl. ¶¶ 65, 71, 75 & 79). And the Court, anyway, cannot credit the allegation that Defendant had knowledge of the defect "by the early summer of 2014" (*see* Compl. ¶ 4) because the Complaint does not "set[] forth the facts upon which th[at] belief is founded." *See Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 313 (D.N.J. 2005), *aff'd sub nom. Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012).[4] Therefore, the "Complaint does not sufficiently allege facts showing that [Defendant] was aware of the alleged defects prior to the sales at issue in this litigation." *See Fishman v. Gen. Elec. Co.*, No. 12-0585, 2014 WL 1628369, at *4 (D.N.J. Apr. 23, 2014).[5]

Second, "[i]n order to satisfy Rule 9(b), a complaint *must* provide . . . the . . . *what*. . . of the events at issue." *See Eastwick*, 657 F. App'x at 93 (emphases added). Plaintiffs assert that

---

[4]     Plaintiffs allege that "the defective nature of the design was peculiarly and exclusively within Trane's knowledge." (*See, e.g.*, Compl ¶¶ 168 & 179). Importantly, "the particularity requirement should be 'relaxed' when facts may be peculiarly within the defendant's knowledge or control . . . ." *Zavala*, 393 F. Supp. 2d at 314. "But even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "[A]llegations must be accompanied by a statement of facts upon which the allegations are based." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 n.27 (D.N.J. 1999) (citing *Burlington Coat Factory,* 114 F.3d at 1418). Plaintiffs do not support the relevant allegations with statements of facts upon which they are based. *See id.*; (*see, e.g.*, Compl ¶¶ 168 & 179). So any "argument that the Rule 9(b) particularity requirements should be relaxed here because certain information was exclusively within Defendant['s] control fails." *See Travelers Indem. Co.*, 620 F. App'x at 86 n.4.

[5]     The Complaint, possibly inconsistently, also suggests that "the precise cause of the defect was discovered" by Defendant by "no later than August 2017." (*See* Compl. ¶¶ 31–32).

Defendant "concealed . . . material facts" and "failed to disclose the existence of the defect," yet do not specify *which* "material facts" or *what* "defect" they attempt to reference in those allegations. (*See* Compl. ¶¶ 111 & 114; *see also* Compl. ¶¶ 108–16).[6] The Complaint thus "fails to identify *what* [mis]representations were made"—and thus "how th[ose] alleged misrepresentations were material." *See Inventory Recovery Corp.*, 2012 WL 2990693, at *6 (emphasis added).

Accordingly, the Court DISMISSES Count II as to Plaintiffs Colbert, Goldis, Rainey, and Sabbatine *without prejudice*. *See, e.g.*, *Lawmen Supply*, 2018 WL 3201790, at *16 (dismissing a negligent misrepresentation claim for failure to comply with Rule 9(b)); *Semeran*, 2016 WL 406339, at *5 (same); *Inventory Recovery Corp.*, 2012 WL 2990693, at *6 (same).

Separately, "Plaintiffs concede" that "the Economic Loss Doctrine precludes Plaintiff Smith's and Plaintiff Livingston's negligent misrepresentation claim[s]." (*See* Pl. Opp. Br. at 20 n.19). Accordingly, the Court DISMISSES Count II as to Plaintiffs Smith and Livingston *with prejudice*.

## C. Count III: Unjust Enrichment

Plaintiffs bring unjust enrichment claims on behalf of themselves and their respective State Sub-Classes, alleging that Defendant "should be required to pay restitution." (Compl. ¶¶ 117–21). Generally, unjust enrichment is an "equitable remedy." *Powers v. Lycoming Engines*, 328 F.

---

[6] Elsewhere in the Complaint, Plaintiffs appear to reference several "defects." (*See, e.g.*, *id.* ¶¶ 90, 167 & 168). And it is not clear whether Plaintiffs' allegations encompass Ryconox or "MJ-X injections" or both. (*See, e.g.*, *id.* ¶¶ 58 ("[S]ystems containing Ryconox *and* subsequently injected with the additive do not pass without objection in the trade.") (emphasis added ) & 61 (Defendant "cannot claim" systems "containing Ryconox *and/or* injected with A/C Re-New pass without objection in the trade . . . .") (emphasis added); *see also* Pl. Opp. Br. at 15 (asserting that "Plaintiffs here alleged precisely what was omitted: (a) that the systems contained compressors with Ryconox . . . *and* (b) MJ-X injections would further harm the systems.") (emphasis added)).

App'x 121, 126 (3d Cir. 2009). Under the law of North Carolina, Pennsylvania, Illinois, and Massachusetts, that equitable remedy is not available to plaintiffs who have an adequate remedy at law. *See, e.g.*, *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992) (quoting *Jefferson Standard Life Ins. Co. v. Guilford Cty*, S.E.2d 430, 434 (N.C. 1945)); *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 06-1833, 2015 WL 3623005, at *28 (E.D. Pa. June 10, 2015) (citing *Meehan v. Cheltenham Twp.*, 189 A.2d 593, 595 (Pa. 1963)) ("[U]njust enrichment is not available where an adequate remedy at law exists."); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004) (citing *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. Ct. 1995)) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law."); *Morrissey v. New England Deaconess Ass'n—Abundant Life Cmtys, Inc.*, 57 N.E.3d 1066, at *5 (Mass. App. Ct. 2016) (citing *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005)).

Here, the Complaint does not allege that Plaintiffs do not have an equitable remedy at law and, in fact, has arguably suggested the opposite. (*See, e.g.*, Compl. ¶ 1 ("This lawsuit seeks to recover damages . . . ."); *id.* ¶ 115 (alleging that Plaintiffs have "suffer[ed] damages and economic loss in an amount to be proven at trial"); *id.* ¶ 137 (affirming that the Express Warranty "is a contract" under which Plaintiffs seek to recover damages)); *see also, e.g.*, *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 964 (2017) (distinguishing a "remedy of damages," which "seeks to compensate the victim for its loss," from "disgorgement of ill-gotten profits," an equitable remedy). Nor does the Complaint appear to "to assert claims in the alternative for unjust enrichment." (*See* Pl. Opp. Br. at 40). Apparently to the contrary, each

Count, including Count III, "repeat[s] and reallege[s] the allegations contained above." (*See, e.g.*, Compl. ¶ 117).[7]

Similarly, under Wisconsin law, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Cont'l Cas. Co. v. Wis. Patients Comp. Fund*, 473 N.W.2d 584, 587 (Wis. Ct. App. 1991) (citing *Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987)). Here, Plaintiffs allege that the parties have entered into a contract—for instance, Plaintiffs cast their breach of express warranty claim under Count V as "Contract." (*See also, e.g.*, Compl. ¶¶ 1 & 137 (affirming that the Express Warranty "is a contract" under which Plaintiffs "seek[] to recover damages"); *id.* ¶ 6 ("Plaintiffs seek relief . . . for breach of contract . . . .")). Therefore, Plaintiffs Colbert, Goldis, Livingston, Rainey and Smith have not stated a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Under Kentucky law, in contrast, the Court rules that Plaintiff Sabbatine has stated a claim. "To recover on a claim of unjust enrichment a plaintiff is required to prove following three elements: (1) benefit conferred upon [a] defendant at [a] plaintiff's expense; (2) a resulting appreciation of benefit by [the] defendant; and (3) inequitable retention of [that] benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge*, LLC, 540 S.W.3d 770, 777–78 (Ky. 2017) (internal quotation marks omitted).[8] First, Plaintiffs allege that they

---

[7]     In their opposition brief, Plaintiffs contend that they "*may* plead unjust enrichment in the alternative to their contract claims" because, they assert, "the validity of the [Express] [W]arranty is at issue." (Pl. Opp. Br. at 40 (emphasis added)). But currently the Court need not rule on whether Plaintiffs *may* plead unjust enrichment; the Court rules, for the reasons discussed above, simply that Plaintiffs *have not* done so.

[8]     *Superior Steel* ruled that "legal remedies, where available and adequate, apply first" but did not categorically rule out the possibility that unjust enrichment, at the same time, could be an "appropriate equitable remedy." *See* S.W.3d at 781–82. And although Defendant purports to cite a case to the contrary, it is a federal case that cites only Massachusetts law for the relevant

"confer[red] a direct benefit in the form of profits to [Defendant]" yet ended up with "defective systems." (*See* Compl. ¶ 119). Second, Defendant "retained these benefits despite knowing the [systems] contained a material defect." (*Id.*). Third, Defendant's continued "retention of the benefit . . . would be unjust and inequitable" (*see id.* ¶ 121) because Defendant "kn[ew] the . . . systems purchased by Plaintiffs and Class members contained a material defect" (*see id.* ¶ 119). Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under Kentucky law. *See Superior Steel*, 540 S.W.3d at 777–78.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Count III as to Plaintiff Sabbatine. And the Court GRANTS Defendant's Motion to Dismiss Count III as to Plaintiffs Colbert, Goldis, Livingston, Rainey and Smith *without prejudice*.

### D. Count IV: Breach of Implied Warranty of Merchantability

Plaintiffs Colbert, Livingston, Rainey, Sabbatine, and Smith bring claims for breach of the implied warranty of merchantability on behalf of themselves and their respective State Sub-Classes. (Compl. ¶¶ 122–32).[9] For the reasons discussed below (*see infra*, sections III.M–III.V), the Court rules that Plaintiffs Colbert, Rainey, and Smith have stated a claim for breach of the

---

proposition. (*See* Def. Mov. Br. at 39 (citing *United States v. Stevens*, 605 F. Supp. 2d 863, 870 (W.D. Ky. 2008)).

[9] In Counts XIV, XVI, XVIII, XX, and XXII, respectively, Plaintiffs Rainey, Smith, Livingston, Colbert, and Sabbatine each allege breaches of "the implied warranty of merchantability" on behalf of his or her self and his or her respective State Sub-Class, under state law. (*See, e.g.*, Compl. ¶¶ 229 & 234). Those Counts are apparently legally indistinguishable from those encompassed by Count IV, in which Plaintiffs equivalently allege a breach of the implied warranty of merchantability "on behalf of themselves and on behalf of their respective State Sub-Classes." (*See id.* ¶ 123).

implied warranty of merchantability under their respective states' laws and DENIES Defendant's Motion to Dismiss Count IV accordingly.

Separately, "Plaintiffs concede" that their implied warranty claims under Count IV "as to Plaintiffs Sabbatine . . . and Livingston . . . may be dismissed for lack of privity." (Pl. Opp. Br. at 38 n.2). Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count IV as to Plaintiffs Sabbatine and Livingston *with prejudice*.

### E. Count V: Breach of Express Warranty (Contract)

Plaintiffs bring claims for breach of express warranty on behalf of themselves and their respective State Sub-Classes. (Compl. ¶¶ 133–42). For the reasons discussed below (*see infra*, sections III.M–III.V), the Court rules that Plaintiffs Colbert, Livingston, Rainey, Sabbatine, and Smith have stated claims for breach of express warranty under their respective states' laws and DENIES Defendant's Motion to Dismiss Count V.

### F. Count VI: Fraudulent Concealment

Plaintiffs bring fraudulent concealment claims on behalf of themselves and their respective State Sub-Classes. (Compl. ¶¶ 143–54). "[A] plaintiff asserting a claim for fraudulent concealment must satisfy the heightened pleading standards under Federal Rule of Civil Procedure 9(b)." *Anglin v. Anglin,* No. 16-4049, 2018 WL 1278304, at *6 (D.N.J. Mar. 12, 2018). Like Count II, Count VI must be dismissed under Rule 9(b) for at least two reasons. First, Plaintiffs never allege *when*, *see Eastwick*, 657 F. App'x at 93, Defendant "intentionally suppressed and concealed the defect" or "had a duty to disclose that its . . . systems were defective." (*See, e.g.*, Compl. ¶¶ 145 & 149; *see also supra*, Section III.B). The *when* is crucial to Plaintiffs' fraudulent concealment claim because Plaintiffs allege that Defendant only "discovered the defect by the

early summer of 2014." (*See* Compl. ¶ 4).[10]  The complaint does not allege with particularity that Defendant had knowledge of the defect at the time Plaintiffs Colbert, Goldis, Rainey, and Sabbatine purchased their systems before or during summer 2014.  (*See* Compl. ¶¶ 65, 71, 75 & 79); *see also Silipena v. Am. Pulverizer Co.*, No. 16-0711, 2017 WL 1135600, at *3 (D.N.J. Mar. 27, 2017) (dismissing a fraudulent concealment claim that merely "state[d] in general terms that [the] [d]efendants 'intentionally, willfully, and maliciously' concealed material defects"). Therefore, the "Complaint does not sufficiently allege facts showing that [Defendant] was aware of the alleged defects *prior to* the sales at issue in this litigation."  *See Fishman*, 2014 WL 1628369, at *4 (emphasis added); *Weske v. Samsung Elecs. Am., Inc.*, No. 10-4811, 2012 WL 833003, at *5 (D.N.J. Mar. 12, 2012) (dismissing a fraudulent concealment claim because the "[p]laintiffs d[id] not provide sufficient factual allegations to establish [that the defendant] knew of [a] [d]efect prior to the sales at issue").

Second, "[i]n order to satisfy Rule 9(b), a complaint *must* provide . . . the . . . . *what*. . . of the events at issue."  *Eastwick*, 657 F. App'x at 93 (emphases added).  Plaintiffs assert that Defendant "intentionally suppressed and concealed the defect" and "Defendant knew or recklessly disregarded that its representations were false," yet do not specify *what* "defect" or *which* "representations" they are referring to in those allegations.  (*See* Compl. ¶¶ 145 & 151; *see also* Compl. ¶¶ 143–54).[11]  The Complaint thus "fails to identify what [mis]representations were made

---

[10]   And, as observed above, *see supra*, note 4, the Court cannot credit the allegation that Defendant had knowledge of the defect "by the early summer of 2014" (*see* Compl. ¶ 4), because the Complaint does not "set[] forth the facts upon which th[at] belief is founded."  *See, e.g., Zavala*, 393 F. Supp. 2d at 313.

[11]      *See, e.g., supra*, note 6.

. . . and how th[ose] alleged misrepresentations were material." *See Inventory Recovery Corp.*, 2012 WL 2990693, at *6.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count VI as to Plaintiffs Colbert, Goldis, Rainey, and Sabbatine *without prejudice. See, e.g.*, *Anglin*, 2018 WL 1278304, at *6 (dismissing a fraudulent concealment claim for failure to comply with Rule 9(b)); *Plonka v. H&M Int'l Transp.*, No. 16-9539, 2017 WL 4516474, at *3 (D.N.J. Oct. 10, 2017) (same); *Weske*, 2012 WL 833003, at *5 (same).

Separately, "Plaintiffs concede that the [Economic Loss Doctrine] precludes" the claims of Plaintiffs Smith and Livingston." (Pl. Opp. Br. at 20 n.19). Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count VI as to Plaintiffs Livingston and Smith *with prejudice*.

### G. Count VII: Violation of the North Carolina Unfair and Deceptive Trade Practices Act

Plaintiff Rainey brings a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75–1.1, *et seq.*, on behalf of herself and the North Carolina State Sub-Class. (Compl. ¶¶ 155–63). In Count VI, Plaintiffs "brought a fraud claim outright;" they also brought this "section 75–1.1 claim [apparently] predicated on precisely the same alleged misrepresentations." *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015). (*Compare, e.g.*, Compl. ¶ 149 (recounting fraudulent concealment allegations), *with id.* ¶ 160 (recounting North Carolina Unfair and Deceptive Trade Practices Act allegations)). Moreover, Plaintiffs' Section 75-1.1 claim is explicitly based on Defendant's having "concealed and failed to disclose" an alleged defect, which Plaintiffs call "deceptive and unconscionable." (*See* Compl. ¶¶ 160 & 163). And a paragraph supporting Count VII "repeat[s] and reallege[s] the allegations contained above" in the Complaint, which include, for instance, allegations of fraudulent concealment. (*See, e.g.*, *id.* ¶¶ 143–55). As a result, "Rule 9(b) applies to [Plaintiffs']

section 75-1.1 claim, which is based on [Plaintiff Rainey's] detrimental reliance on [Defendants'] alleged misrepresentations." *See Topshelf*, 117 F. Supp. 3d at 731–32; (*see also id.* ¶¶ 155–63).

The Court must dismiss Count VII under Rule 9(b) for substantially the same reasons discussed above with respect to Counts II and VI—for instance, that Plaintiffs do not specify *when* Defendants "engaged in unfair or deceptive acts" with respect to each individual Plaintiff. *See, e.g.*, *Eastwick*, 657 F. App'x at 93; *Inventory Recovery Corp.*, 2012 WL 2990693, at *6; (*id.* ¶ 160). Accordingly, the Court DISMISSES Count VII *without prejudice*.

### H. Count VIII: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

Plaintiff Smith brings a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. § 201-1, *et seq.* ("UTPCPL"), on behalf of himself and the Pennsylvania State Sub-Class. (Compl. ¶¶ 164–72). "[A] UTPCPL claim based on deceptive conduct differs from a claim based on fraudulent conduct . . . ." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 n.33 (3d Cir. 2013). Here, Plaintiffs allege that that Defendant "advertis[ed] . . . with the intent not to sell . . . as advertised;" "actively conceal[ed]" and "[i]ntentionally concealed" alleged defects; and "purposefully with[eld] material facts" from Plaintiff Smith. (Compl. ¶¶ 166 & 168). And as with every Count, Plaintiffs also "repeat and reallege the allegations contained above," which include the fraudulent concealment allegations. (*See* Compl. ¶¶ 142–58 & 164). Thus Count VIII's "theory sounds in fraud," and the Court rules that Rule 9(b) applies to Count VIII. *See, e.g.*, *Travelers Indem. Co.*, 620 F. App'x at 85.

The Court must dismiss Count VIII for substantially the same reasons discussed above with respect to Counts II, VI, and VII—for instance, that Plaintiffs "failed to identify when certain allegedly false representations were made" and "do[] not sufficiently allege facts showing that [Defendant] was aware of the alleged defects prior to the sales at issue in this litigation." *See*

*Fishman*, 2014 WL 1628369, at *4; *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 548 (D.N.J. 2004) (dismissing a UTPCPL claim). Accordingly, the Court DISMISSES Count VIII, *without prejudice*.

## I. Count IX: Violations of the Wisconsin Deceptive Trade Practices Act

Plaintiff Livingston brings a claim for violations of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.* ("WDPTA"), on behalf of herself and the Wisconsin State Sub-Class. (Compl. ¶¶ 173–81). Count IX alleges that Defendant "knew about the defect;" "supplied false information;" and made "untrue, deceptive, and misleading assertions." (*Id.* ¶¶ 176–78). Count IX also "repeat[s] and reallege[s] the allegations contained above," which include the fraudulent concealment allegations. (*See id.* ¶¶ 142–58 & 173). Thus this "Wis. Stat. § 100.18 claim is subject to the heightened pleading standard of Rule 9(b)." *Kisting v. Gregg Appliances, Inc.*, No. 16-141, 2016 WL 5875007, at *5 (E.D. Wis. Oct. 7, 2016); *Miller v. Vonage Am., Inc.*, No. 14-379, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015) (citing *Pirelli Armstrong Tire Copr. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011)); *Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 978 (W.D. Wis. 2013). For substantially the same reasons discussed above with respect to Counts II, VI, VII, and VIII, "Plaintiffs' allegations fall short of complying with Rule 9(b)." *See Moscinski v. Bristol-Myers Squibb Co.*, No. 06-6055, 2009 WL 5216962, at *7 (D.N.J. Dec. 30, 2009). For instance, Plaintiffs failed to specify *when* Defendant "had a duty to disclose to Livingston and members of the Wisconsin Class the defect in its . . . systems" (*see* Compl. ¶ 179) and "do[] not sufficiently allege facts showing that [Defendant] was aware of the alleged defects prior to the sales at issue in this litigation." *See, e.g.*, *Fishman*, 2014 WL 1628369, at *4. Accordingly, the Court DISMISSES Count IX *without prejudice*.

### J.      Count X:  Violations of the Illinois Consumer Fraud Act

Plaintiff Colbert brings a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Stat. Ann. 505/1, *et seq.* ("ICFA"), on behalf of himself and the Illinois State Sub-Class.  (Compl. ¶¶ 182–93).  Count X alleges that Defendant "intended that Colbert and the Illinois Class members would rely on its deceptive acts;" Defendant made "deceptive misrepresentations, concealments, and omissions;" and Defendant's "conduct constituted consumer *fraud*."  (*Id.* ¶¶ 188, 189 & 193 (emphasis added)).  Count X also "repeat[s] and realleg[es] the allegations contained above," which include the fraudulent concealment allegations.  (*See Id.* ¶¶ 142–58 & 182).  Like Counts II, VI, VII, VIII, and IX, the Court must "analyze ICFA claims of deception under the heightened pleading standard of Federal Rule of Civil Procedure 9(b)," particularly because Count X "relies upon the same baseline allegation[s]" as Plaintiffs' fraudulent concealment claims.  *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); *Smith v. NVR, Inc*., No. 17-8328, 2018 WL 2718038, at *2 (N.D. Ill. June 6, 2018); (*compare* Compl. ¶¶ 142–58, *with id.* ¶¶ 182–93).

For substantially the same reasons as Counts II, VI, VII, VIII, and IX, Plaintiffs' allegations in Count X "fall short of complying with Rule 9(b)."  *See, e.g.*, *Moscinski*, 2009 WL 5216962, at *7.  Accordingly, the Court DISMISSES Count X *without prejudice*.

### K.      Count XI:  Violations of Massachusetts's Regulation of Business Practices for Consumer Protection

Plaintiff Goldis brings a claim for violations of Massachusetts's Regulation of Business Practices for Consumer Protection, Mass. Gen. Laws, Ch. 93A, *et seq.*, on behalf of himself and the Massachusetts State Sub-Class.  (Compl. ¶¶ 194–205).

Count XI alleges that Defendant engaged in "countless . . . deceptive acts" and a "*deceptive scheme to mislead* consumers;" and that such "violations of [law] were willful and knowing."

(Compl. ¶¶ 200 (emphasis added), 202).  Count XI also "repeat[s] and reallege[s] the allegations contained above," which include the fraudulent concealment allegations.  (*See id.* ¶¶ 142–58 & 194).  As Counts II, VI, VII, VIII, IX, and X, Count XI "is subject to the heightened pleading requirement."  *See Mulder v. Koh's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 450 (D. Mass. 2018).  So for substantially the same reasons discussed above, "Plaintiffs' allegations fall short of complying with Rule 9(b)."  *See Moscinski*, 2009 WL 5216962, at *7.

Accordingly, the Court DISMISSES Count XI *without prejudice*.

**L.      Count XII:  Violations of the Kentucky Consumer Protection Act**

Plaintiff Sabbatine brought a claim for violations of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110 to 367.330, on behalf of himself and the Kentucky State Sub-Class.  (Compl. ¶¶ 206–14).  But "Plaintiffs concede that Mr. Sabbatine's claim as currently pled . . . is barred by that statute's two-year limitation."  (Pl. Opp. Br. at 7 n.5).  Accordingly, the Court GRANTS Defendant's Motion to Dismission Count XII *without prejudice*.

**M.      Count XIII:  Breach of Express Warranty (North Carolina)**

Plaintiff Rainey, a resident of North Carolina, brings a claim for breach of express warranty under N.C.G.S. § 25-2-313, on behalf of herself and the North Carolina State Sub-Class.  (*See* Compl. ¶¶ 215–27).  The facts pertinent to this claim are described directly below "in the light most favorable" to Plaintiffs.  *See, e.g.*, *McDermott*, 649 F. App'x at 266.

In August 2014, Plaintiff Rainey purchased a new system from a third-party company, which also installed the system.  (Compl. ¶ 65).  "[I]n making her decision to purchase," Plaintiff Rainey "researched" the system "and reviewed product information provided by the distributor and on Trane's website," which did not state that Trane's systems "contained a chemical

contaminant that would cause them to cease functioning soon after installation." (*Id.* ¶ 65). Plaintiff Rainey also "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" when making her decision to purchase. (*Id.* ¶ 114; *see also* Def. Mov. Br. at 32). In August 2016, Plaintiff Rainey's system "began to fail" (*id.* ¶ 67) because of "contaminated oil and clogged TXVs" (*see id.* ¶ 136). Plaintiff Rainey "contacted Trane customer service, and was provided only scripted responses and denials that there was a manufacturing defect." (*Id.* ¶ 67). Defendant then "fail[ed] to replace contaminated oil and clogged TXVs" and, instead, "instructed service personnel to inject MJ-X, which causes damage and further devalue[d] the system[,]" and did "not remed[y] the underlying defect." (*Id.* ¶ 136). Because the system was "beg[inning] to fail," Plaintiff Rainey paid the third-party company that sold her the system $300 to "inject the system with MJ-X (*see id.* ¶ 67), "pursuant to Trane's recommendation" (Compl. Ex. A at 2).

Plaintiff Rainey, along with all Plaintiffs, sent a letter to Defendant in June 2017 (the "Demand Letter") "demand[ing] that [Defendant] replace all affected . . . systems, or all [relevant] parts . . . ; and reimburse [Plaintiffs] . . . who incurred out-of-pocket costs . . . ." (*Id.* ¶ 83). The Demand Letter is appended to the Complaint as Exhibit A. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider . . . exhibits attached to the complaint . . . .").

### 1. Defendant's Threshold Arguments

Defendant presents at least four threshold arguments that, it contends, bar all of Plaintiffs' express warranty and implied warranty claims. The Court rejects each argument with respect to Plaintiff Rainey and will draw on the following analysis with respect to Plaintiffs' other warranty claims as well.

*First*, Defendant argues that Plaintiff Rainey's express warranty claim is time-barred.[12] The statute of limitations on contract actions in North Carolina is three years, N.C.G.S. § 1-51(1), but "it is established that parties may shorten applicable statutes of limitation so long as the contractual limitation is reasonable," *Morgan v. Lexington Furniture Indus., Inc.*, 639 S.E.2d 141, at *2 (N.C. Ct. App. 2006) (citing *Holmes & Dawson v. East Carolina Ry.*, 118 S.E. 887, 890 (N.C. 1923)).[13] Citing these sources of law, Defendant asserts that, sometimes, "contractual time limitations are enforceable even if they are shorter than the otherwise applicable statute of limitations." (Def. Mov. Br. at 11). But "a defendant must plead and prove" affirmative defenses. *See, e.g.*, *Buckley v. Kinder*, No. 12-7069, 2013 WL 941562, at *1 (D.N.J. Mar. 6, 2013) (citing *Jones v. Bock*, 549 U.S. 199, 204 (2007)); *see also, e.g.*, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing Fed. R. Civ. P. 8(c); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1271 (1969)) (recognizing that "the burden of pleading [a defense] rests with the defendant"). Defendant does not support the proposition that the time bar in the Express Warranty was a

---

[12] Defendant claims, actually, that "*All* Of Plaintiffs' Claims Are Time Barred Pursuant To The Terms Of The Express Warranty." (Def. Mov. Br. at 11 (emphasis added)). The Court rejects this argument. The plain language of the Express Warranty purports to bar only "claimed breach[es]" of *the Express Warranty*: "No action arising out of any claimed breach of *this limited warranty* may be brought by a Purchaser more than one (1) year after the cause of action has arisen." (*See id.* at 12 (citing Def. Mov. Br. Ex. A) (emphasis added); *see also* Pl. Opp. Br. at 7–8).

Except with respect to Count XII, which the Court dismisses without prejudice (*see infra*, Section III.G; Pl. Opp. Br. at 7 n.5), Defendant focuses only on the purportedly-shortened statute of limitations and has not argued that Plaintiffs' claims are untimely under the standard statutes of limitations. (*See* Def. Mov. Br. at 11–14; Def. Reply Br. at 2–4; *see also, e.g.*, Def. Reply Br. at 2 (suggesting that Plaintiffs' claims accrued "well over one year before their August 2017 filing")). Accordingly, because the Court is rejecting the shortened-statute argument, it need not address Plaintiff's equitable tolling argument. (*See* Pl. Opp. Br. at 13–14).

[13] Notably, reasonableness under North Carolina law involves questions of fact. *See, e.g.*, *Riley v. Ken Wilson Ford, Inc.*, 426 S.E.2d 717, 721 (N.C. Ct. App. 1993) ("What is a reasonable time depends upon the facts of each case . . . .").

- 22 -

reasonable contractual limitation. (*See* Def. Mov. Br. at 11–14); *see also In re: Elk Cross Timbers*, 2015 WL 6467730, at *9 (The defendant "has not properly moved to dismiss . . . causes of action . . . as it has not pointed to any of the relevant state's requirements as compared to [the] [p]laintiffs' allegations."). And Plaintiffs apparently contest the reasonableness or legality of the purported time bar. (*See* Pl. Opp. Br. at 7). Accordingly, the Court rejects Defendant's time bar argument.

***Second***, Defendant argues (a) that Plaintiff Rainey "cannot maintain" an express warranty claim because she does "not allege that [she] submitted warranty claims to Trane for any of the alleged failures in the Complaint" (*see* Def. Mov. Br. at 15); or (b) that Plaintiff Rainey did not comply with notice requirements under federal and state law (*see id.* (citing 15. U.S.C. § 2310(e)) (requiring that a "person obligated under the warranty . . . [be] afforded a reasonable opportunity to cure [an alleged] failure to comply"); *Butcher v. DaimlerChrysler Co., LLC*, No. 08-0207, 2008 WL 2953472, at *3 (M.D.N.C. July 29, 2008) (citing N.C.G.S. § 25-2-607(3)(a))). The Court rejects both propositions.

### (a) Plaintiff Rainey submitted her warranty claim to Trane.

Plaintiff Rainey "contacted Trane customer service" in 2016 after her system "began to fail" and "was provided only scripted responses and denials that there was a manufacturing defect." (Compl. ¶ 67).[14] And Plaintiff Rainey's system was "inject[ed]" with MJ-X (*see id.*) "pursuant to Trane's recommendation" (*see* Demand Letter at 2), implicitly suggesting that Trane had notice of the defect.[15] Most importantly, Plaintiff Rainey, along with all Plaintiffs, sent the Demand Letter

---

[14] Plaintiff Rainey also contacted the company that sold her the system and reported the problem (Compl. ¶¶ 66–67), but the legal effect of that report is disputed (*see, e.g.*, Pl. Opp. Br. at 23; Def. Reply Br. at 4).

[15] Elsewhere, Plaintiffs' allegations support a conflicting inference. (*See, e.g.*, Compl. ¶ 67 ("Rainey agreed to . . . inject the system with MJ-X . . . pursuant to Trane's *General* Service Bulleting.") (emphasis added)). But as discussed below, *see infra*, note 24, the "Court cannot

to Defendant in June 2017, "demand[ing] that [Defendant] replace all affected . . . systems, or all [relevant] parts . . . ; and reimburse [Plaintiff] . . . who incurred out-of-pocket costs . . . ." (*Id.* ¶ 83). The Demand Letter lists each named plaintiff and his or her location; identifies when he or she "purchased a defective system" and the model and serial number on each such system; and specifically describes the alleged defect in each system and the damages incurred by each plaintiff as a result. (*See* Demand Letter at 1–3). The Demand letter also asserted that Defendant was "in breach of . . . implied and express warranties and . . . violated the . . . MMWA . . . as well as the common law and consumer protection laws;" and specifically requested, among other requests, that Defendant "[r]eplace all . . . parts . . . necessary" to cure the alleged defects. (*Id.* at 4). Defendant never responded to the Demand Letter, and Plaintiffs filed this lawsuit more than two months after sending it. (*See* Compl. ¶ 83).

Defendant does not identify any provision in the Express Warranty or any source of law that would require Plaintiff to do more than send the Demand Letter to "submit[] [a] warranty claim." (*See* Def. Mov. Br. at 15–17); *see also Luong v. Subaru of Am., Inc.*, No. 17-3160, 2018 WL 2047646, at *9 (N.D. Cal. May 2, 2018) ("[The defendant] has not identified any way in which the letter here is deficient under the terms of the express warranty.").[16] "Limited warranties . . . to repair and to replace defective parts require[] that *the warrantor* do *more* than make good faith attempts to repair defects when requested to do so." *Stutts v. Green Ford, Inc.*, 267 S.E.2d 919, 924 (N.C. Ct. App. 1980) (emphases added). And although Defendant *asserts* that "[a] 'notice' letter . . . is not the same thing as a warranty claim" (Def. Mov. Br. at 17) and that "Plaintiffs'

_____

resolve such [conflicts] on a motion to dismiss." *See Tagidou v. Apostolides*, No. 05-1136, 2007 WL 1933583, at *2 (D.N.J. June 28, 2007).

[16] Defendant also asserts that the Demand Letter was sent "post-repair," but does not cite any authority that would make this assertion legally relevant. (*See* Def. Reply Br. at 5; *see also* Def. Mov. Br. at 16).

counsel's post-repair, pre-lawsuit letter is inadequate" (Def. Reply Br. at 5), Defendant does not cite any legal authority to support those propositions. (*See id.*; Def. Mov. Br. at 17). In other words, Defendant does not explain why Plaintiff Rainey—or any other plaintiff—has not "made a valid warranty claim" with the Demand Letter. (*See* Def. Mov. Br. at 16). The Court rejects its argument.

### (b) Plaintiff Rainey complied with notice requirements under federal and state law.

The Court observes that for a class action to "proceed" under the MMWA beyond "establish[ing] the representative capacity of the named plaintiffs," the defendant allegedly "obligated under the warranty . . . [must be] afforded a reasonable opportunity to cure such failure to comply." *See* 15 U.S.C.A. § 2310(e); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1004 (D.C. Cir. 1986) ("[A] plaintiff may *file* a class action, but may not *proceed* with that action, until she has afforded the defendant a reasonable opportunity to cure its alleged breach.") (emphasis added). Given the Demand Letter, and for the reasons discussed immediately above, the Court rejects the contention that Defendant was not "afforded a reasonable opportunity to cure [its alleged] failure to comply" with the Express Warranty or implied warranties. *See* 15 U.S.C.A. § 2310(e). Defendant never even responded to the Demand Letter. (Compl. ¶ 83).

Defendant also contends that Plaintiff Rainey did not comply with notice requirements under State law, citing *Butcher*, which in turn cites N.C.G.S § 25-2-607(3)(a). (*See* Def. Mov. Br. at 15). N.C.G.S § 25-2-607(3)(a) provides: A "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Importantly, *Butcher* recognizes that "[w]hether a plaintiff has provided notice and reasonable opportunity to cure are questions of fact" unless "only one inference can be drawn as to the reasonableness of the notice." *See Butcher*, 2008 WL 2953472, at *3. Here, five of the six

named plaintiffs, including Plaintiff Rainey, sent the Demand Letter within approximately one year or less of when their systems "*began* to fail." (*See* Compl. ¶¶ 64, 67, 70, 73 & 80 (all emphasis added); Demand Letter).[17]   The Court is not prepared to rule as a matter of law that such notice was unreasonable.   *See, e.g.*, *Rad Servs., Inc. v. Am. Ref. Grp., Inc.*, 479 A.2d 565, 567 (Pa. Super. Ct. 1984) (quoting White & Summers, Uniform Commercial Code § 11–10 (2nd ed. 1980)) ("[O]ne is tempted to say that a reasonable time in this context has as many meanings as there are fact patterns in the cases."); (*see also* Pl. Opp. Br. at 25 ("It would be absurd to conclude that a formal written notice of a breach of warranty—which is sent directly to the manufacturer, sets forth a demand for cure, and provides ample time to do so—does not constitute adequate notice.")).[18]

Accordingly, the Court rejects Defendants' arguments that Plaintiff Rainey has not submitted her claim to Defendant or has not complied with the "reasonable opportunity to cure" requirements under federal and state law.   *See* 15 U.S.C.A. § 2310 (e); *Stutts*, 267 S.E.2d at 924; (Compl. ¶ 67; *see also generally* Demand Letter).

***Third***, Defendant argues that "Plaintiffs' Warranty Claims Fail Because The Units Remain Operational" and "there is no cognizable injury to remedy."  (Def. Mov. Br. at 17).  But the mere fact that a unit remains operational does not, for instance, rule out the possibility that Defendant

---

[17]     The exception is Plaintiff Goldis, who replaced his system's "TXV valve . . . under warranty" in 2014, but continued to have problems into "the summer of 2016," within approximately a year of the Demand Letter.  (*See* Compl. ¶¶ 75–77; Demand Letter).

[18]     Plaintiffs also suggest that the Express Warranty "does not require consumers to provide notice *to Trane*," as opposed to system service technicians, and that "courts have held that consumers provide sufficient notice merely by contacting a service technician."  (Pl. Opp. Br. at 23 (emphasis added)).  The Court need not rule on this argument at this time and simply observes that "[s]tate law varies on what constitutes reasonable notice and to whom notice should be given . . . ."  *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 727 (5th Cir. 2007).

"refused to provide adequate repairs as required by its own warranty" and thus caused damages to Plaintiff. (*See, e.g.*, Compl. ¶ 4). As discussed below, Plaintiff Rainey plausibly alleges all three elements of an express warranty claim under North Carolina law. *See Ford Motor Credit Co. LLC v. McBride*, 811 S.E.2d 640, 646 (N.C. Ct. App. 2018). And Defendant does not cite any North Carolina law that would require a good not to be operational at the time a plaintiff brings a breach of a warranty claim; Defendant has not identified any "continued-to-malfunction" (*see* Def. Mov. Br. at 18) or "present-defect" requirement (*see* Def. Reply Br. at 6). (*See* Def. Mov. Br. at 17–19). So the Court also rejects this argument.

**Fourth**, Defendant argues that "Plaintiffs' Express Warranty Claims Fail Because The Applicable Disclaimers Are Fully Enforceable." (Def. Mov. Br. at 19). As a result, Defendant asserts, some of "the 'costs' (e.g., labor) Plaintiffs seek under their breach of express warranty theories were contractually disclaimed and are not recoverable." (*Id.*). Defendant correctly observes that the Express Warranty purports to "disclaim[] any *[warranty] coverage* for labor, shipping, or increased utility usage costs." (*See* Def. Mov. Br. at 20–21 (emphasis added); Def. Mov. Br. Ex. A). But this language—although it limits the Express Warranty's coverage—does not purport to limit *the damages* that a plaintiff may recover for *a breach* of the Express Warranty. (*See id.*).[19] Moreover, *the quantum* of damages Plaintiff Rainey would be entitled to if she prevails on her express warranty claim is distinct from whether she has stated that claim. *See, e.g.*, *In re Merrill Lynch*, 191 F.R.D. 391, 396 (D.N.J. 1999), *aff'd sub nom. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ("Proof of damage,

---

[19]     Contrast Def. Mov. Br. Ex. A ("[Defendant]'s maximum liability hereunder is limited to the original purchase price of the products.").

which is an essential element of the cause of action itself, must be distinguished from the mere calculation of damages.").   As explained below, the Court rules that she has stated that claim.[20]

## 2. Analysis

N.C.G.S. § 25-2-313(1)(a) and (b) provide that "[e]xpress warranties by the seller are created" by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;" and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."[21] An express warranty claim requires three elements:  "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." *McBride*, 811 S.E.2d at 646 (quoting *Harbor Point Homeowners' Ass'n v. DJF Enters., Inc.*, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010)).[22] For instance, if a seller states that a vehicle has "no mechanical

---

[20]     Defendants also respond to Plaintiffs' allegations (*see* Compl. ¶¶ 137–39; *see also* Pl. Opp. Br. at 32–36) that the Express Warranty is unconscionable (*see* Def. Br. at 23–26; Def. Reply at 7–8).  But unconscionability is not an element of any warranty claims at issue, *see, e.g.*, *Ford Motor Credit Co. LLC v. McBride*, 811 S.E.2d 640, 646 (N.C. Ct. App. 2018), so the Court need not address the parties' arguments on unconscionability with respect to the warranty claims at this time.

[21]     Additionally, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  N.C.G.S. § 25-2-313(2).

[22]     Notably, under North Carolina law, "whether warranties were made or breached [a]re questions of fact, not law."  *JWR Sales Co. v. New Millenium Cinemas, L.L.C.*, 607 S.E.2d 55, at *2 (2005) (citing *Davis Realty, Inc. v. Wakelon Agri–Products, Inc.*, 351 S.E.2d 816, 818 (N.C. Ct. App.1987)).

issues," a buyer relies on that affirmation when he buys the vehicle, and the vehicle is "not in good working order," the buyer would have an express warranty claim. *See id.*

Here, similarly, Plaintiffs' allegations plausibly establish the three relevant elements. First, neither Plaintiffs nor Defendant dispute the existence of an express warranty "as to a fact or promise relating to the goods." (*See e.g.*, Compl. ¶ 34; *id.* ¶ 135; Def. Mov. Br. at 8–10). The Express Warranty, Plaintiffs allege, warrants the systems "against manufacturing defects" (*see* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1) and warrants that Defendant would "provide adequate repairs" required as a result of manufacturing defects by "replac[ing] . . . parts" (*see* Compl. ¶¶ 4 & 6).[23] Second, Plaintiffs allege that Plaintiff Rainey, "[i]n making her decision to purchase" a

---

[23]     Importantly, as just suggested, the Complaint appears to allege breaches of *two kinds* of express warranties, which are implicitly distinguished or sometimes treated differently under state law. First, Plaintiffs allege that Defendant extended an express "limited warranty against manufacturing defects" with respect to "all parts." (*See* Compl. ¶ 34; Def. Mov. Br. Ex. A at 1). Second, Plaintiffs allege that Defendant expressly warranted that it would "provide adequate repairs" required *as a result of* manufacturing defects. (*See* Compl. ¶ 4; Def. Mov. Br. Ex. A at 1). A warranty "related to the quality or description" of goods, like the first one alleged, is distinguishable from a warranty that "promises . . . [to] repair or replace defective parts during the warranty period." *See, e.g.*, *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007). The Court of Appeals for the Third Circuit has recognized this distinction and called the latter kind of warranty "a remedial promise." *Amvest Corp. v. Anderson Equip. Co.*, 358 F. App'x 344, 347 (3d Cir. 2009). The UCC "defines a remedial promise as 'a promise by the seller to repair or replace goods or to refund all or part of the price of goods upon the happening of a specified event.'" *Id.* (quoting U.C.C. § 2–103(1)(n) (2004)); *see also Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983) ("[A] repair or replacement warranty merely provides a *remedy* if the product becomes defective."). A "breach-of-warranty claim" is thus distinct from a "breach-of-remedial-promises claim." *See id.*

Defendant suggests that the Express Warranty is a "repair or replace" warranty such that Plaintiffs are bringing a "breach-of-remedial-promises claim." (*See, e.g.*, Def. Mov. Br. at 20). As noted above, Plaintiffs appear to make that claim *in addition to* a claim that Defendant breached a "limited warranty against manufacturing defects" with respect to "all parts" by selling Plaintiffs' systems with defective parts. (*See* Compl. ¶¶ 1 & 34; Def. Mov. Br. Ex. A at 1). The Express Warranty contains language that arguably supports both kinds of claims. (*See* Def. Mov. Br. Ex. A at 1 ("extend[ing] a limited warranty against manufacturing defects"); *id.* (promising "under this limited warranty" to "furnish a replacement part")).

Whether the Express Warranty supports either or both claims is open to interpretation. But "[i]t is sufficient for purposes of the motion to dismiss to find that Plaintiffs' claim[s] [are] not

system, "researched the system and reviewed product information" (*id.* ¶ 65) and "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" (*id.* ¶ 114; *see also* Def. Mov. Br. at 32). *See, e.g., Pake v. Byrd*, 286 S.E.2d 588, 589 (N.C. Ct. App. 1982) (recognizing a valid express warranty claim predicated on a "decision to purchase . . . initiated by [an] advertisement"). And third, Plaintiff Rainey alleges that her system "began to fail" (Compl. ¶ 67) because of a manufacturing defect, "sticking TXV" (*see id.* ¶¶ 27–32); Defendant "deni[ed] that there was a manufacturing defect," did not replace the TXV,[24] and "instruct[ed] service personnel to inject the defective systems" with MJ-X, which "damages and devalues" them (*id.* ¶ 136); and she suffered damages as a result (*id.* ¶ 67).

---

clearly precluded by the language of the contract." *Marsala v. Dun & Bradstreet*, No. 10-302, 2010 WL 11570249, at *1 (D.N.J. May 27, 2010); *see also Morris v. BMW of N. Am., LLC*, No. 13-4980, 2014 WL 793550, at *11 (D.N.J. Feb. 26, 2014) ("The Court declines to construe the terms . . . of this particular Warranty at this stage of the litigation . . . .") (citing *Mack Trucks Inc. v. BorgWarner Turbo Sys., Inc.*, 508 Fed. Appx. 180, 184–185 (3d Cir. 2012)).

Accordingly, when appropriate, the Court will evaluate whether Plaintiffs plausibly allege a claim of either kind. (*See, e.g.*, *infra*, note 27).

[24] Plaintiffs, in the Demand Letter, appear to recognize that Defendant "provided . . . free TXVs parts" to some or all of Plaintiffs. (Demand Letter at 3). If Defendant did furnish such parts, Defendant would arguably have been in compliance with the promise to replace parts in the Express Warranty, which identifies Defendant's "only responsibility" as "furnish[ing] a replacement . . . without charge for the part only, to replace any . . . part that fails due to a manufacturing defect under normal use and maintenance." (Def. Mov. Br. Ex. A at 1).

When the Court is "faced with two conflicting versions of the essential facts," the Court "Court cannot resolve such issues on a motion to dismiss." *Tagidou*, 2007 WL 1933583, at *2; *S. Gas, Inc. v. Exxonmobil Oil Corp.*, No. 09-6236, 2016 WL 816748, at *9 (D.N.J. Feb. 29, 2016) ("[C]onflicting positions cannot be resolved on a motion to dismiss."); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 181 (3d Cir. 2000) ("[A] court must credit the allegations of the complaint and not the defendant's responses when resolving conflicting allegations on a motion to dismiss."); *Delavau, LLC v. Corbion NV*, No. 15-1183, 2016 WL 3410176, at *3 (D.N.J. June 16, 2016) ("The Court . . . cannot credit [the] defendants' interpretation of the exhibits over [the] plaintiff's conflicting interpretation at this motion to dismiss stage.").

Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiff Rainey, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under North Carolina law. *See* N.C.G.S. § 25-2-313(1)(a); *McBride*, 811 S.E.2d at 646. Accordingly, the Court DENIES Defendant's motion to dismiss Count XIII.

### N.    Count XIV:  Breach of Implied Warranty (North Carolina)

Plaintiff Rainey brings a claim for breach of the implied warranty of merchantability under N.C.G.S. § 25-2-314, on behalf of herself and the North Carolina State Sub-Class. (Compl. ¶¶ 228–38). The facts relevant to the Court's analysis of this claim are summarized above.

"[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . ."[25] N.C.G.S. § 25-2-314(1). "Goods to be merchantable must be at least such as . . . to pass without objection in the trade under the contract description; *and* . . . fit for the ordinary purposes for which such goods are used." N.C.G.S. § 25-2-314(2)(a)–(c) (emphasis added). "A claim for breach of the implied warranty of merchantability . . . requires a plaintiff to prove 'first, that the goods bought and sold were subject to an implied warranty of merchantability; second, that the goods did not comply with the warranty in that the goods were defective at the time of sale; third, that his injury was due to the defective

---

[25]    North Carolina's and the laws of the other states at issue provide that the implied warranty of merchantability may be "excluded or modified." *See, e.g.*, N.C.G.S. § 25-2-314(1) (citing N.C.G.S. § 25-2-316). Defendant does not contend that the implied warranty of merchantability has been excluded by the Express Warranty. (*See, e.g.*, Def. Mov. Br. at 26–28; Def. Reply at 10–11). The Express Warranty specifically contemplates the implied warranty of merchantability when it notes that it is "limited to the duration of the applicable product warranty." (*See* Def. Mov. Br. Ex. A). And Defendant does not argue that the "duration of the applicable product warranty" has expired. (*See, e.g.*, Def. Mov. Br. at 26–28; Def. Reply Bt. at 10–11).

nature of the goods; and fourth, that damages were suffered as a result.'" *Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Directors v. DJF Enterprises, Inc.*, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010) (quoting *Cockerham v. Ward*, 262 S.E.2d 651, 658 (N.C. Ct. App. 1980)).

Here, first, Plaintiff Rainey's system is a "good," *see* N.C.G.S. § 25-2-105(1); Defendant "is a merchant with respect to goods of th[e] kind" purchased by Rainey Plaintiff, *see* N.C.G.S. § 25-2-314(2); N.C.G.S. § 25-2-104(1); and the Express Warranty specifically contemplates that her system is subject to the implied warranty of merchantability but that it is "limited [in] duration" (*see* Def. Mov. Br. Ex. A; Def. Reply Br. at 3).

Second, Plaintiff Rainey has plausibly alleged that her system "w[as] defective at the time of sale," *see Harbor Point*, 206 N.C. App. at 162–63, because "[t]he defect arises from a chemical rust inhibitor" installed before the system was sold (*see, e.g.*, Compl. ¶¶ 1–2 ("Trane admitted the existence of the manufacturing defect in dealer service bulletins in 2014.") & 28; *see also id.* ¶¶ 59–60). *See S. of Rocky Mount, Inc. v. Woodward Specialty Sales, Inc.*, 279 S.E.2d 32, 35 (N.C. Ct. App. 1981) ("Under the notice pleading theory of Rule 8(a)(1), [the] plaintiff's allegations of latent defects sufficiently raised the issue of breach of implied warranty."). Importantly, a good can be "defective at the time of sale" even if it functions for several years after the sale. *See, e.g.*, *id.*

Third and fourth, the defect allegedly present at the time of sale caused Plaintiff Rainey's system to begin "to fail," leading her to incur several hundreds of dollars in damages. (*See* Compl. ¶ 67). Thus Plaintiff Rainey *did* "allege *how* the product was not fit for its ordinary use," contrary to Defendant's assertion (*see* Def. Mov. Br. at 26 (emphasis added)). Therefore, drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an

entitlement for relief," *see Iqbal*, 556 U.S. at 679, under North Carolina law. *See* N.C.G.S. § 25-2-314; *Harbor Point*, 697 S.E.2d at 447.

Finally, the Court rejects Defendant's argument that Count XIV must be dismissed for lack of privity. (*See, e.g.*, Def. Mov. Br. at 28). North Carolina law contains an exception to the "privity requirement when, as is the case here, the consumer, rather than the dealer, is the ultimate user" of the relevant good. *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *16 (D.N.J. May 8, 2017); *Coastal Leasing Corp. v. O'Neal*, 405 S.E.2d 208, 212 (N.C. Ct. App. 1991); *see also* N.C.G.S. § 99B-2(b).

Accordingly, the Court DENIES Defendant's Motion to Dismiss Count XIV.

**O.**     **Count XV:  Breach of Express Warranty (Pennsylvania)**

Plaintiff Smith, a resident of Pennsylvania, brings a claim for breach of express warranty under 13 Pa. Stat. § 2313, on behalf of himself and the Pennsylvania State Sub-Class. (Compl. ¶¶ 239–51). The facts pertinent to this claim are described directly below "in the light most favorable" to Plaintiffs. *See, e.g.*, *McDermott*, 649 F. App'x at 266.

In July 2014, Plaintiff Smith purchased a new system from a third-party company, which also installed the system. (Compl. ¶ 68). "[I]n making his decision to purchase," Smith "researched the system and reviewed product information provided by the distributor and on Trane's website," which did not state that Defendant's systems "contained a chemical contaminant that would cause them to cease functioning soon after installation." (*Id.*). Plaintiff Smith also "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" in making his decision to purchase. (*Id.* ¶ 114; *see also* Def. Mov. Br. at 32). In August 2016, Smith's system "began to fail" (*Id.* ¶ 70) because of "contaminated oil and clogged TXVs" (*see id.* ¶ 136). Defendant then "fail[ed] to replace contaminated oil and clogged TXVs" and,

instead, "instructed service personnel to inject MJ-X, which causes damage and further devalue[d] the system[,]" and did "not remed[y] the underlying defect." (*Id.* ¶ 136).  Because the system was "beg[inning] to fail," Plaintiff Smith paid the third-party company that sold him the system $678 to repair it "with MJ-X." (*See id.* ¶ 70).

### 1.  Defendant's Threshold Arguments

***First***, Defendant argues that Plaintiff Smith's express warranty claim is time-barred. (*See, e.g.*, Def. Mov. Br. at 11).  Similar to as in North Carolina, "[i]n Pennsylvania, a breach of contract claim has a statute of limitations" but "[t]he parties are allowed to contract for a shorter limitation period, so long as the contractual period is not manifestly unreasonable." *See Hahnemann Univ. Hosp. v. All Shore*, *Inc.,* 514 F.3d 300, 306 (3d Cir. 2008) (citing 42 Pa. Stat. § 5525(a)(8)).  As already discussed above, "a defendant must plead and prove" affirmative defenses. *See, e.g.*, *Buckley*, 2013 WL 941562, at *1 (citing *Bock*, 549 U.S. at 204).  Although Defendant has observed that "contractual time limitations" could under certain conditions shorten "otherwise applicable statute of limitations," Defendant has not adequately argued this defense—for instance, Defendant has not explained that the one-year period for which it advocates is not manifestly unreasonable. (*See, e.g.*, Def. Mov. Br. at 11–14).

***Second***, Defendant argues (a) that Plaintiff Smith "cannot maintain [his] Express Warranty claims" because he does "not allege that they submitted warranty claims to Trane for any of the alleged failures in the Complaint" (*see* Def. Mov. Br. at 15–16); or (b) that Plaintiff did not comply with notice requirements under federal and state law (*see id.* (citing 15. U.S.C. § 2310(e); *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 364 (M.D. Pa. 2013) (citing U.C.C. § 2-607(3)(a))).  As explained above, however, Defendant does not support the assertion that Plaintiff Smith—or any other Plaintiff—has not "made a valid warranty claim" or has not provided

notice to Trane with the Demand Letter. (*See, e.g.*, Def. Mov. Br. at 16); *see also Luong*, 2018 WL 2047646, at *9 ("[The defendant] has not identified any way in which the letter here is deficient under the terms of the express warranty."). Moreover, like Plaintiff Rainey, Plaintiff "Smith incurred over $600 for an injection of MJX *pursuant to Trane's recommendation*," implicitly suggesting that Trane had notice of the defect. (*See* Demand Letter at 2 (emphasis added)).

As the Court already ruled above, Plaintiffs have complied with the MMWA notice requirement. *See* 15 U.S.C.A. § 2310(e). And with respect to state law, the text of N.C.G.S § 25-2-607(3)(a) and 13 Pa. Stat. § 2607(c)(1), the operative law in Pennsylvania, is identical. "Whether a buyer discovers a breach and gives notice of it within a reasonable time is normally a jury question," *Rad Servs.*, 479 A.2d at 567; and the case interpreting Pennsylvania law that Defendant relies on for its argument involved a complaint that was "devoid of any allegation that [the] [p]laintiffs . . . provided notice," *see In re Shop-Vac*, 964 F. Supp. 2d at 364. For the reasons already discussed, such is not the case here.

The Court rejects Defendants third and fourth threshold arguments (*see* Def. Mov. Br. at 17–19) for the same reasons already discussed above.

### 2. Analysis

The text of 13 Pa. Stat. § 2313(a) is the same as that of N.C.G.S. § 25-2-313(1). Under Pennsylvania law, "to establish breach of an express warranty, a plaintiff must show the defendant made an express representation, the product did not perform as warranted, and caused injury." *Eiser v. Brown & Williamson Tobacco Corp.*, No. 191, 2006 WL 933394, at *5 (Pa. Super. Ct. Jan. 19, 2006). Here, first, neither Plaintiffs nor Defendant dispute the existence of an express warranty "as to a fact or promise relating to the goods." (*See e.g.*, Compl. ¶¶ 34 & 135; Def. Mov.

Br. at 8–10). The Express Warranty, Plaintiffs allege, warrants the systems "against manufacturing defects" (*see* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1) and warrants that Defendant would "provide adequate repairs" required as a result of manufacturing defects by "replac[ing] . . . parts" (*see* Compl. ¶¶ 4 & 6). Second, Plaintiffs allege that Smith, "[i]n making his decision to purchase . . . researched the system and reviewed product information" (*id.* ¶ 68) and "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" (*id.* ¶ 114; *see also* Def. Mov. Br. at 32). And third, Plaintiff alleges that his Trane system "began to fail" (Compl. ¶ 70) because of a manufacturing defect, "sticking TXV" (*see id.* ¶¶ 27–32); and he suffered damages as a result (*id.* ¶ 70). Plaintiff Smith, therefore, has plausibly alleged that Defendant breached a "promise relating to the goods." *See* 13 Pa. Stat. § 2313(a)(1); *Eiser*, 2006 WL 933394, at *5.

Moreover, Plaintiff alleges that Defendant "breached the express warranty by failing to replace contaminated oil and clogged TXVs" and "instruct[ed] service personnel to inject the defective systems" with MJ-X, which "damages and devalues" them (*id.* ¶ 136). An allegation that Defendant "refused to honor the remedies contained in the [E]xpress [W]arranty" is *also*[26] "sufficient to state a breach of warranty claim." *See Burke v. Honeywell Int'l, Inc.*, No. 15-1921, 2016 WL 1639820, at *5 (E.D. Pa. Apr. 26, 2016).

Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under Pennsylvania law. *See* 13 Pa. Stat. § 2313(a)(1); *Eiser*, 2006 WL 933394, at *5. Accordingly, the Court DENIES Defendant's motion to dismiss Count XV.

---

[26]     *See supra*, note 23.

**P.  Count XVI:  Breach of Implied Warranty (Pennsylvania)**

Plaintiff Smith brings a claim for breach of implied warranty under 13 Pa. Stat. § 2314, on behalf of himself and the Pennsylvania State Sub-Class.  (Compl. ¶¶ 252–62).  The facts relevant to the Court's analysis of this claim are summarized above.

The text of 13 Pa. Stat. § 2314 is the same as that of N.C.G.S. § 25-2-314.  Under 13 Pa. Stat. § 2314, goods must be "free from significant defects," and "perform in the way that goods of that kind should perform."  *Gall by Gall v. Allegheny Cty. Health Dep't*, 521 Pa. 68, 75 (1989).

Here, first, Plaintiff Smith's system is a "good," *see* 13 Pa. Stat. § 2105; *Gall*, 521 Pa. at 75; Defendant is "is a merchant with respect to goods of th[e] kind" purchased by Plaintiff Smith, *see* 13 Pa. Stat. §§ 2104–2105; and the Express Warranty specifically contemplates that his system is subject to the implied warranty of merchantability but that it is "limited [in] duration" (*see* Def. Mov. Br. Ex. A; *see also* Def. Reply Br. at 3).

Second, Plaintiffs have plausibly alleged that Plaintiff Smith's system was not "free from significant defects," *see Gall*, 521 Pa. at 75, because "[t]he defect arises from a chemical rust inhibitor . . . used by one of Trane's suppliers" before the system was sold (*see, e.g.*, Compl. ¶ 1; *id.* ¶ 2 ("Trane admitted the existence of the manufacturing defect in dealer service bulletins in 2014."), 28; *see also id.* ¶¶ 59–60).  Moreover, the alleged defect caused Plaintiff Smith's system to begin "to fail," causing him to incur several hundreds of dollars in damages.  (*See id.* ¶ 70).  Thus Plaintiff Smith *did* "allege *how* the product was not fit for its ordinary use," contrary to Defendant's assertion.  (*See* Def. Mov. Br. at 26).  Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under Pennsylvania law.  *See* N.C.G.S. § 25-2-314; *Gall*, 521 Pa. at 75.

Finally, the Court rejects Defendant's argument that Count XVI must be dismissed for lack of privity. (*See, e.g.*, Def. Mov. Br. at 28). "[U]nder Pennsylvania law, privity of contract is not required to sue under implied warranties when the Uniform Commercial Code applies." *S.N.A., Inc. v. Hartzell Propeller, Inc.*, No. 95-1397, 1996 WL 283646, at *3 (E.D. Pa. May 29, 1996); *see also Phillips v. Cricket Lighters et al.*, 883 A.2d 439, 444 (Pa. 2005) ("[P]rivity would not bar a modern breach of warranty claim.").

Accordingly, the Court DENIES Defendant's Motion to Dismiss Count XVI.

## Q. Count XVII: Breach of Express Warranty (Wisconsin)

Plaintiff Livingston, a resident of Wisconsin, brings a claim for breach of express warranty under Wis. Stat. § 402.313, on behalf of herself and the Wisconsin State Sub-Class. (Compl. ¶¶ 263–75). The facts pertinent to this claim are described directly below "in the light most favorable" to Plaintiffs. *See, e.g.*, *McDermott.*, 649 F. App'x at 266.

In October 2014, Plaintiff Livingston purchased a new system from a third-party company, which also installed the system. (Compl. ¶ 62). "[I]n making her decision to purchase . . ., [Plaintiff Livingston] researched the system and reviewed product information provided by the distributor and on Trane's website," which did not state that Trane's "systems contained a chemical contaminant that would cause them to cease functioning soon after installation." (*Id.* ¶ 62). Plaintiff Livingston also "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" in making her decision to purchase. (*Id.* ¶ 114; *see also* Def. Mov. Br. at 32). In July 2016, "Livingston's system stopped cooling her home" (*Id.* ¶ 64) because of "contaminated oil and clogged TXVs" (*see id.* ¶ 136). Defendant then "fail[ed] to replace contaminated oil and clogged TXVs" and, instead, "instructed service personnel to inject MJ-X, which causes damage and further devalue[d] the system[,]" and did "not remed[y] the underlying

defect." (*Id.* ¶ 136). The company that sold Plaintiff Livingston her system observed that it "ha[d] seen very limited success" with MJ-X injection. (*Id.* ¶ 64). Plaintiff "Livingston paid $684 out-of-pocket . . . to correctly fix her defective Trane system." (*Id.*).

### 1. Defendant's Threshold Arguments

The Court rejects Defendant's four threshold arguments for substantially the same reasons as expressed above. The Court adds only two observations. First, the standard for shortening a statute of limitations period under Wisconsin law is similar to that under the law of the other plaintiffs' jurisdictions and would require Defendant to make some showing as to reasonableness. *Compare, e.g.*, *Faxon Sales, Inc. v. U-Line Corp.*, No. 17-872, 2017 WL 4990617, at *5 (E.D. Wis. Oct. 31, 2017) (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 874 (7th Cir. 1997)), *with Morgan*, 639 S.E.2d 141, at *2, *and Hahnemann*, 514 F.3d at 306. Second, the notice requirement under Wisconsin law identified by Defendant (*see* Def. Mov. Br. at 15–16) is substantially the same as that in the other plaintiffs' jurisdictions. *Compare, e.g.*, *Schnabl v. Ford Motor Co.*, 198 N.W.2d 161, 161–62 (Wis. 1972), *with Butcher*, 2008 WL 2953472, at *3, *and Rad Servs.*, 479 A.2d at 567.

### 2. Analysis

The text of Wis. Stat. § 402.313(1) is the same as that of N.C.G.S. § 25-2-313(1) and 13 Pa. Stat. § 2313(a). "[A]t a minimum, a warranty must be (1) an affirmation of fact relating to the goods that (2) becomes 'part of the basis of the bargain.'" *Bobholz v. Banaszak*, 655 N.W.2d 547, at *3 (Wis. Ct. App. 2002) (quoting Wis. Stat. § 402.313). But "the affirmation does not have to be the sole basis for the sale; it need only be 'a factor in the purchase.'" *Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 972 (E.D. Wis. 2009) (quoting *Ewers v. Eisenzopf*, 276 N.W.2d 802, 805 (Wis. 1979)). "For example, in *Ewers*, . . . a seller's statement that sea shells, a

piece of coral and a driftwood branch were 'suitable for salt water aquariums, if they were rinsed' constituted an express warranty because it affirmed the quality of the goods sold and was a factor in the buyer's decision to purchase the goods." *Bobholz*, 655 N.W.2d 547, at *3. A court "properly f[inds] that [a] warranty was breached" when a warranted product "was defective." *Id.*, at *4.

Here, the Complaint plausibly pleads an express warranty claim. First, neither Plaintiffs nor Defendant dispute the existence of an express warranty "as to a fact or promise relating to the goods." (*See e.g.*, Compl. ¶¶ 34 & 135; Def. Mov. Br. at 8–10). The Express warranty, Plaintiffs allege, warrants the systems "against manufacturing defects" (*see* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1) and warrants that Defendant would "provide adequate repairs" required as a result of manufacturing defects by "replac[ing] . . . parts" (*see* Compl. ¶¶ 4 & 6). Second, Plaintiffs allege that Livingston, "[i]n making her decision to purchase a Trane system, . . . researched the system and reviewed product information" (*id.* ¶ 62) and "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" (*id.* ¶ 114; *see also* Def. Mov. Br. at 32). Hence the warranty was "a factor in the purchase" of Livingston's system. *See Ewers*, 276 N.W.2d at 805. And third, Plaintiff Livingston alleges that her system "stopped cooling her home" (Compl. ¶ 64) because of a manufacturing defect, "sticking TXV" (*see* Compl. ¶¶ 27–32); and she suffered damages as a result (*id.* ¶ 64). The system, therefore,"was defective." *See Bobholz*, 655 N.W.2d 547, at *4. Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under Wisconsin law. *See* Wis. Stat. § 402.313(1); *Bobholz*, 655 N.W.2d 547, at *3.

Accordingly, the Court DENIES Defendant's motion to dismiss Count XVII.

**R.      Count XVIII:  Breach of Implied Warranty (Wisconsin)**

Plaintiff Livingston brings a claim for breach of implied warranty under Wis. Stat. § 402.314, on behalf of herself and the Wisconsin State Sub-Class.  (Compl. ¶¶ 276–86).  "Plaintiffs concede that the Implied Warranty claims under . . . Wisconsin law . . . as to Plaintiff[] . . . Livingston . . . may be dismissed for lack of privity."  (Pl. Opp. Br. at 38 n.2).  Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count XVIII *with prejudice*.

**S.      Count XIX:  Breach of Express Warranty (Illinois)**

Plaintiff Colbert, a resident of Illinois, brings a claim for breach of express warranty under 810 Ill. Comp. Stat. Ann. 5/2-313, on behalf of himself and the Illinois State Sub-Class. (Compl. ¶¶ 287–99).  The facts pertinent to this claim are described directly below "in the light most favorable" to Plaintiffs.  *See, e.g.*, *McDermott.*, 649 F. App'x at 266.

In June 2014, Plaintiff Colbert purchased a system from a third-party company, which also installed the system.  (Compl. ¶ 79).  "[I]n making his decision to purchase [the] system, Colbert reviewed Trane brochures which were shown to him by [the third-party company]," which "did not disclose that Trane's . . . systems contained a chemical contaminant that would cause them to cease functioning soon after installation."  (*Id.* ¶ 79).  Plaintiff Colbert also "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" in making his decision to purchase.  (*Id.* ¶ 114; *see also* Def. Mov. Br. at 32).  "In May 2017, Colbert's system stopped working due to a clogged TXV."  (*Id.* ¶ 80).  "Trane did not replace his contaminated oil, or change any filters."  (*Id.*).  Colbert "incurred over $150 to replace the TXV" and "the contaminant is still within [Colbert's] system."  (*Id.* ¶ 80).

**1.  Defendant's Threshold Arguments**

The Court rejects Defendants's four threshold arguments for substantially the same reasons dsicussed above.  *See, e.g.*, *Zerjal v. Daech & Bauer Const., Inc.*, 939 N.E.2d 1067, 1075 (Ill. App.

Ct. 2010) ("[I]t is well established that parties to a contract may agree upon a shortened contractual limitations period to replace a statute of limitations, *as long as it is reasonable*.") (internal quotation marks omitted) (emphasis added); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) (citing 810 Ill. Comp. Stat. Ann. 5/2-607) (recognizing that "the notice requirement" may be satisfied when "the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer").

## 2. Analysis

810 Ill. Comp. Stat. Ann. 5/2-313 contains the same text as the express warranty statutes of North Carolina, Pennsylvania, and Wisconsin. *See* N.C.G.S. § 25-2-313; 13 Pa. Stat. § 2313; Wis. Stat. § 402.313. That provision "makes plain that an express warranty is related to the quality or description of the goods." *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007).[27] "If a seller delivers conforming goods, the warranty is satisfied. If the seller delivers nonconforming goods, the warranty is breached at that time. Even if the buyer is unaware that the goods, as delivered, do not conform to the seller's affirmation . . . the warranty has been breached." *Id.*; *see also Dickie v. Cannondale Corp.*, No. 13-3889, 2016 WL 3765798, at *4 (Ill. Ct. App. 2016) ("If the goods fail to conform to the affirmations or promises, the seller may be held accountable for breach of warranty.") (citing *Weng v. Allison*, 287 Ill. App. 3d 535, 537 (1997)).

Here, the Complaint plausibly pleads an express warranty claim. First, neither Plaintiffs nor Defendant dispute the existence of an express warranty "as to a fact or promise relating to the goods." (*See e.g.*, Compl. ¶¶ 34 & 135; Def. Mov. Br. at 8–10). The Express warranty, Plaintiffs

---

[27]     *Mydlach* involved a warranty that was "*not* related to the quality or description of the goods" but that "promise[d] *only* that the manufacturer will repair or replace defective parts during the warranty period." *See* 875 N.E.2d at 1058 (emphases added). Here, as discussed above, the Express Warranty allegedly encompasses both kinds of promises. (*See supra*, note 23.)

allege, warrants the systems "against manufacturing defects" (*see* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1) and warrants that Defendant would "provide adequate repairs" required as a result of manufacturing defects by "replac[ing] . . . parts" (*see* Compl. ¶¶ 4 & 6). Second, Plaintiff Colbert alleges that his system "stopped working due to a clogged TXV" (*Id.* ¶ 80) because of a manufacturing defect, "sticking TXV" (*see* Compl. ¶¶ 27–32); and he suffered damages as a result (*id.* ¶ 80). In sum, the system "fail[ed] to conform" to the warranty "against manufacturing defects" (*see* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1) and thus "the seller may be held accountable for breach of warranty." *See Dickie*, 2016 WL 3765798, at *4. Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under Illinois law. *See* 810 Ill. Comp. Stat. Ann. 5/2-313; *Dickie*, 2016 WL 3765798, at *4.

Accordingly, the Court DENIES Defendant's motion to dismiss Count XIX.

### T.    Count XX:  Breach of Implied Warranty (Illinois)

Plaintiff Colbert brings a claim for breach of the implied warranty of merchantability under 810 Ill. Comp. Stat. Ann. § 5/2-314, on behalf of himself and the Illinois State Sub-Class. (Compl. ¶¶ 300–10). But "[i]n order for a plaintiff to file a claim for economic damages under the UCC for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller." *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988)). "This means that 'the UCC article II implied warranties give a buyer of goods a potential cause of action *only against his immediate seller.*'" *Id.* (quoting *Rothe*, 518 N.E.2d at 1029). The Supreme Court of Illinois "has consistently declined to abolish the doctrine in cases where purely economic damages

are sought." *Id.*; *accord Zaffiri v. Pontiac RV, Inc.*, No. 12-0042, 2012 WL 7050429, at *11 (Ill. App. Ct. 2012).

Plaintiffs do not allege that Defendant was the "immediate seller" of the system to Colbert. (*See* Compl. ¶¶ 78–80). The Complaint, apparently to the contrary, alleges that Colbert "purchased a new Trane system which was installed by *Goodberlet Heating & Cooling*." (*Id.* ¶ 79 (emphasis added)). Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count XX *without prejudice*.

### U.  Count XXI:  Breach of Express Warranty (Kentucky)

Plaintiff Sabbatine, a resident of Kentucky, brings a claim for breach of express warranty under Ky. Rev. Stat. Ann. § 355.2-313, on behalf of himself and the Kentucky State Sub-Class. (Compl. ¶¶ 311–23). The facts pertinent to this claim are described directly below "in the light most favorable" to Plaintiff. *See, e.g.*, *McDermott.*, 649 F. App'x at 266.

In July 2014, Plaintiff Sabbatine purchased a new system from a third-party company, which also installed the system. (Compl. ¶ 71). Plaintiff Sabbatine "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" in making his decision to purchase. (*See id.* ¶ 114; *see also* Def. Mov. Br. at 32). In February 2017, Sabbatine's system "was not performing well and [he] hired Goldey's Heating and Cooling ('Goldey's') to perform maintenance." (*Id.* ¶ 73). Goldey's discovered that the system "was not functioning properly due to a partially clogged TXV" and "contacted Trane, which informed the technician that the system was within the timeframe of the . . . rust inhibitor defect." (*Id.*) Trane "advised the technician to inject MJ-X" but the "MJ-X failed to resolve the problem." (*Id.*) "Goldey's replaced the TXV but the system still failed to function because the contaminant had also caused a reversing valve to

stick." (*Id.*) "Goldey's then replaced the reversing valve and refrigerant. Plaintiff Sabbatine incurred over $2,000 to repair the defect in his system." (*Id.*)

### 1. Defendant's Threshold Arguments

The Court rejects Defendant's four threshold arguments for substantially the same reasons discussed above. *See, e.g.*, *Teske v. State Farm Fire & Cas. Co.*, No. 08-514, 2009 WL 4254583, at *2 (W.D. Ky. Nov. 25, 2009) (citing *Edmondson v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989)) ("Although the general statute of limitations on a breach of contract claim is fifteen years, the contract itself may shorten that period *so long as the contractual limitation is reasonable*." (emphasis added)); *Mullins v. Wyatt*, 887 S.W.2d 356, 357 (Ky. 1994) (citing Ky. Rev. Stat. Ann. § 355.2-607(3)(a)); *id.* at 358 (affirming the proposition that "whether the litigation notice given . . . was 'within a reasonable time' should be determined as an issue of fact").

### 2. Analysis

Ky. Rev. Stat. Ann. § 355.2-313 contains the same text as the express warranty statutes of North Carolina, Pennsylvania, Wisconsin, and Illinois. *See* N.C.G.S. § 25-2-313; 13 Pa. Stat. § 2313; Wis. Stat. § 402.313; 810 Ill. Comp. Stat. Ann. 5/2-313. "Express warranties in Kentucky are governed by Ky. Rev. Stat. Ann. 355.2-313, which states that an express warranty is created where: (1) the seller makes an affirmation of fact or promise; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties." *House v. Bristol-Myers Squibb Co.*, No. 15-0894, 2017 WL 55876, at *5 (W.D. Ky. Jan. 4, 2017). "For example, an express warranty is created if (a) a Christmas tree seller promises a buyer that the tree would not fall over if pushed, and (b) the buyer relies on that promise in purchasing it (because he had two small children)." *Taylor v. Southwire Tools & Equip.*, 130 F. Supp. 3d 1017, 1021 (E.D. Ky. 2015). A claim for

breach of express warranty must allege that the "goods fail to conform to the manufacturer's express representations." *Kempf v. Lumber Liquidators, Inc.*, No. 16-0492, 2017 WL 4288903, at *7 (W.D. Ky. Sept. 27, 2017).

Here, the Complaint plausibly pleads an express warranty claim. First, neither Plaintiffs nor Defendant dispute the existence of an express warranty making an affirmation or promise as relating to the system. (*See, e.g.*, Compl. ¶ 34; *id.* ¶ 135; Def. Mov. Br. at 8–10); *House*, 2017 WL 55876, at *5. The Express warranty, Plaintiffs allege, warrants the systems "against manufacturing defects" (*see* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1) and warrants that Defendant would "provide adequate repairs" required as a result of manufacturing defects by "replac[ing] . . . parts" (*see* Compl. ¶ 4; *id.* ¶ 6). Plaintiff Sabbatine, moreover, alleges that he "reviewed and relied upon the statements contained in Defendant's marketing and warranty materials" in making his decision to purchase, making it a basis of their bargain. (*See id.* ¶ 114; *see also* Def. Mov. Br. at 32); *House*, 2017 WL 55876, at *5. Finally, Plaintiff Sabbatine alleges that his system was "not functioning properly due to a partially clogged TXV" (*id.* ¶ 73) resulting from a manufacturing defect (*see* Compl. ¶¶ 27–32); and he suffered damages as a result (*id.* ¶ 73). In sum, the system "fail[ed] to conform to the manufacturer's express representations" regarding defects. (*See* Compl. ¶ 135; Def. Mov. Br. Ex. A at 1); *Kempf*, 2017 WL 4288903, at *7.

Drawing "all reasonable inferences" in favor of, and construing the Complaint "in the light most favorable" to, Plaintiffs, *see McDermott*, 649 F. App'x at 266, Plaintiffs' allegations "plausibly give rise to an entitlement for relief," *see Iqbal*, 556 U.S. at 679, under Kentucky law. *See* Ky. Rev. Stat. Ann. § 355.2-313; *Kempf*, 2017 WL 4288903, at *7. Accordingly, the Court DENIES Defendant's Motion to Dismiss Count XXI.

## V.     Count XXII:  Breach of Implied Warranty (Kentucky)

Plaintiff Sabbatine brought a claim for breach of implied warranty under Ky. Rev. Stat. Ann., on behalf of himself and the Kentucky Class.  (Compl. ¶¶ 324–34).  "Plaintiffs concede that the Implied Warranty claims under Kentucky law . . . as to Plaintiff[] Sabbatine . . . may be dismissed for lack of privity."  (Pl. Opp. Br. at 38 n.2).  Accordingly, the Court GRANTS Defendant's Motion to Dismiss Count XXII *with prejudice*.

## IV.    Conclusion

For the foregoing reasons, the Court GRANTS-in-part and DENIES-in-part Defendant's Motion to Dismiss as follows:

- Count I shall proceed.

- Count II is DISMISSED as to Plaintiffs Colbert, Goldis, Rainey, and Sabbatine *without prejudice*; and as to Plaintiffs Livingston and Smith *with prejudice*.

- Count III is DISMISSED as to Plaintiffs Colbert, Goldis, Livingston, Rainey, and Smith *without prejudice*.

- Count III shall proceed as to Plaintiff Sabbatine.

- Count IV is DISMISSED as to Plaintiffs Livingston and Sabbatine *with prejudice*.

- Count IV shall proceed as to Plaintiffs Colbert, Rainey, and Smith.

- Count V shall proceed as to Plaintiffs Colbert, Livingston, Rainey, Sabbatine, and Smith.

- Count VI is DISMISSED as to Plaintiffs Colbert, Goldis, Rainey, and Sabbatine *without prejudice*; and as to Plaintiffs Livingston and Smith *with prejudice*.

- Counts VII through XII are DISMISSED *without prejudice*.

- Counts XIII through XVII shall proceed.

- Count XVIII is DISMISSED *with prejudice*.

- Count XIX shall proceed.

- Count XX is DISMISSED *without prejudice*.

- Count XXI shall proceed.

- Count XXII is DISMISSED *with prejudice*.

Plaintiffs have already requested leave to amend Count XII. (*See* Pl. Opp. Br. at 7 n.5). The Court grants this request. *See* Fed. R. Civ. P. 15(a)(2); *Mullin v. Balicki*, 875 F.3d 140, 150–51 (3d Cir. 2017) (discussing the conditions under which "leave to amend might reasonably be denied"). Plaintiffs also may amend any Count or part of Count dismissed without prejudice within thirty days, but "application for dismissal . . . may be made if a timely amendment is not forthcoming within that time." *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976) (per curiam)).

An appropriate Order accompanies this Opinion.

<u>*s/Esther Salas*</u>
**Esther Salas, U.S.D.J.**